IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

(1) RHONDA MENGERT,

    Plaintiff,

v.

(1) UNITED STATES OF AMERICA,

    Defendant.

Case No. 21-CV-00443-CVE-SH

**Defendant United States of America's Reply to Plaintiff's Opposition to Motion to Dismiss**

In its motion to dismiss, Defendant explained the Court lacks subject-matter jurisdiction over Plaintiff's FTCA claim because the United States is immune from suit for intentional torts committed by TSA screeners. Defendant further explained that Plaintiff's IIED claim should be dismissed for failure to state a claim upon which relief can be granted because she neither alleged conduct rising to the level of "extreme and outrageous" nor emotional distress that is actionably "severe."

Plaintiff makes three arguments in response. First, she contends that 28 U.S.C. § 2680(h)'s law enforcement proviso applies to TSA screeners, thereby waiving sovereign immunity for claims arising out of their intentional torts. (Doc. 13 at 7–17). Second, she asserts that her Complaint alleges an unauthorized "strip search," and a factfinder could conclude that such a search is sufficiently "extreme and outrageous" to establish IIED.[1] *Id.* at 18–21. Third, Plaintiff argues that she plausibly alleged "severe" emotional distress.

Plaintiff's arguments are meritless. The first argument fails because the text, context, and history of the law enforcement proviso make clear that it applies only to intentional torts committed by "investigative or law enforcement officers" with traditional police powers to investigate and respond to suspected criminal conduct. The second argument fails because Plaintiff's characterization of what happened as a "strip search" is not an allegation of fact that must be accepted as true. When considered objectively and in context, the events (as alleged by Plaintiff) were not so outside the bounds of civilized society as to be "extreme and outrageous." Finally, Plaintiff's third argument fails because a reasonable person would be able to cope with the alleged transient symptoms of emotional distress and continue to

---

[1] Plaintiff's Opposition posits that a jury should determine whether the alleged conduct rises to the level of "extreme and outrageous," but a jury is not available in an FTCA action, and the Court is the factfinder. 28 U.S.C. § 2402.

1

conduct her daily life affairs. The alleged symptoms are therefore insufficient to state a claim for IIED.

**I.    The FTCA's "law enforcement proviso" does not apply.**

Defendant identified five textual indicia in 28 U.S.C. § 2680(h) that support reading the proviso to apply only to investigative and law enforcement officers invested with traditional police powers, *not* TSA screeners:

- Congress used the term "officers" rather than the broader term "employees," which was used elsewhere in the FTCA.
- Congress further restricted the "officers" to whom the proviso applies to "investigative or law enforcement officers."
- Congress required that the "investigative or law enforcement officers" to whom the proviso applies must be "empowered by law" to execute searches, seize evidence, or make arrests for violation of federal law. Had Congress wanted to reach any employee who conducts an administrative search, it would have used more general terms such as "perform inspections" or "conduct screenings."
- "Execute searches" must be read in tandem with "seize evidence" and "make arrests," rather than in isolation, suggesting a narrower scope. *See Dolan v. U.S. Post. Serv.*, 546 U.S. 481, 486–87 (2006).
- All three authorities (to execute searches, seize evidence, and make arrests) are properly read to be limited by "for violations of Federal laws." TSA screeners search for prohibited items at a security checkpoint, not for evidence of federal crimes.

Plaintiff's arguments are not persuasive, and each requires reading stray words and phrases of the law enforcement proviso in isolation, without regard for statutory context and applicable canons of construction. First, Plaintiff cites *Dolan* to argue that "the FTCA is generally to be broadly construed in favor of affording a remedy for torts by government employees." (Doc. 13 at 9). But *Dolan* simply does not stand for that principle. *Dolan* did not involve the FTCA's waiver of sovereign immunity; instead, it involved an exception to that waiver that restored the United States' immunity. Since the exception was restoring rather than waiving immunity, the Supreme Court held it did not have to be construed narrowly to favor the sovereign. Here, Plaintiff's claim would be barred by the intentional tort exception

2

unless the law enforcement proviso—an exception-to-the-exception—applies. Accordingly, the proviso operates as a waiver of sovereign immunity; it is not restoring immunity like the provision at issue in *Dolan*. Because the law enforcement proviso *waives* immunity, the principle of strict construction should still apply. This point has been fully explained by multiple judges, as Plaintiff acknowledges. (Doc. 13 at 10) (citing *Pellegrino v. United States*, 937 F.3d 164, 199–200 (3d Cir. 2019) (Krause, J., dissenting); *Iverson v. United States*, 973 F.3d 843, 866 (8th Cir. 2020) (Gruender, J., dissenting)). In any event, the Court need not apply any special rule of construction—the text, context, and history of the law-enforcement proviso show that it does not apply to TSA screeners conducting administrative checkpoint searches of airline passengers and their property.

Second, Plaintiff argues this Court should not follow two opinions that concluded TSA screeners are not "officers of the United States" within the meaning of the law enforcement proviso. (Doc. 13 at 10–12) (citing *Corbett v. TSA*, 568 F. App'x 690, 700-02 (11th Cir. 2014), and *Iverson*, 973 F.3d at 855-68 (dissenting op.)). Plaintiff contends that conclusion was incorrect, as no other courts have followed the holding, *id.* at 8, and TSA screeners "wear uniforms with badges that prominently display the title 'US Officer,'" *id.* at 11. In fact, at least two additional courts have agreed that TSA screeners are not "officers" within the meaning of the FTCA. *Gesty v. United States*, 400 F. Supp. 3d 859, 864 (D. Ariz. 2019); *Vanderklok v. United States*, 142 F. Supp. 3d 356, 361–62 (E.D. Pa. 2015). And other courts have rejected the perfunctory reasoning that federal employees must be "officers" simply because they wear badges. *See Garrett's Worldwide Enters., LLC v. United States*, No. 14-cv-2281, 2015 WL 11825762, at *5 (D. Kan. Mar. 6, 2015) (rejecting argument that possession of badges—"forms of identification [that] are common among modern [federal]

3

employees"—"transforms the essentially civilian and administrative nature of [Department of Transportation inspectors] into" investigative or law enforcement officers within the meaning of the FTCA); *Pellegrino*, 937 F.3d at 193 (Krause, J., dissenting) (rejecting badge argument as a "superficial gloss" irrelevant to understanding a waiver of sovereign immunity).

Third, Plaintiff argues that the proviso's use of the phrase "investigative or" in addition to the phrase "law enforcement officer" means that it covers more than just "traditional law enforcement officers." (Doc. 13 at 12). She further contends that if the proviso is read to cover only traditional law enforcement officers, that would render "the words 'investigative or' into surplusage." *Id.* Plaintiff's narrow focus on the words "investigative or" is misplaced, as the entire phrase "investigative or law enforcement officer" is given a specific definition that plainly refers to traditional police powers of criminal investigation.[2] Even considered in isolation, the word "investigative" suggests more wide-ranging and involved responsibilities than what TSA screeners are empowered to do—that is, carry out limited administrative security screening in accordance with a standard operating procedure at designated checkpoints. TSA screeners simply do not "investigate" anything, but rather apply the SOP to screen passengers and carry-on property; to the extent their discovery of a prohibited item or possible threat to transportation security necessitates investigation, such investigation is beyond their responsibility and is conducted by law enforcement officers or

---

[2] *See Leuthauser v. United States*, No. 20-cv-479, 2020 WL 4677296, at *3 (D. Nev. Aug. 12, 2020) ("Although plaintiff centralizes her counterargument on the 'investigative or' portion of the proviso, the court instead looks to the FTCA's provided definition.").

4

TSA inspectors who are called to take up any necessary inquiry.³

Fourth, Plaintiff argues that TSA screeners meet the definition of "investigative or law enforcement officers" because they are empowered to conduct security screening, such screening constitutes a search under the Fourth Amendment, and thus they "execute searches" within the meaning of the law enforcement proviso. (Doc. 13 at 12–15). But "execute searches" connotes an individual imbued with police powers; it is therefore instructive that Congress chose that phrase rather than alternative language—such as "carry out," "conduct," or "put into effect"—that does not have the same connotation. And although "execute searches" may refer to more than just searches pursuant to a warrant, such as a search incident to arrest or an exigent search, those additional criminal law enforcement contexts underscore that the phrase is not naturally read to include every instance in which a federal employee performs a limited administrative search.⁴

Fifth, Plaintiff asserts that "execute searches" should be interpreted in isolation, without regard to the other enumerated duties in the proviso ("seize evidence" and "make arrests"). (Doc. 13 at 12–13). That argument is contrary to *Dolan*, 546 U.S. at 486–87, where the Supreme Court interpreted a very similar provision of the FTCA. The Court applied the interpretive principle that a "word is known by the company it keeps" to reject a broad and

---

³ *See* Crawford Decl., ¶¶ 9–12; *Leuthauser*, 2020 WL 49677296, at *3 ("Although TSA screeners may be tasked with identifying evidence, it is ultimately—as plaintiff admits—the law enforcement officer who is summoned to take action.").

⁴ *See, e.g.*, *Weinraub v. United States*, 927 F. Supp. 2d 258, 262 (E.D.N.C. 2012) ("[T]he phrase 'to execute searches,' when considered in the broader context of the law enforcement proviso, does not contemplate the type of searches performed by TSA screeners."); *Walcott v. United States*, No. 13-cv-3303, 2013 WL 5708044, at *2 (E.D.N.Y. Oct. 18, 2013).

5

acontextual interpretation of "negligent transmission" of mail (which, like "execute searches," was listed in the disjunctive).[5]

Sixth, Plaintiff minimizes the modifier "for violations of Federal law" in § 2680(h), asserting that it does not apply to "execute searches" or means only that TSA screeners act pursuant to federal law. (Doc. 13 at 16–17). But executing a search "for violations of Federal law" is different in kind from implementing an administrative procedure to look for items, most of which are lawful to possess, that are not permitted in the sterile area of an airport or the cabin of a commercial aircraft. As the dissenting judges recognized in *Pellegrino*, 937 F.3d at 186, a conclusion that TSA screeners are searching for evidence of criminal wrongdoing "misapprehends the administrative search doctrine" and would place a "constitutional cloud . . . over the entire TSA program." And the rule of the last antecedent that Plaintiff invokes does not apply when a modifier applies in the same manner to all items on the preceding list. *See Clark v. Martinez*, 543 U.S. 371, 378 (2005); *Jama v. ICE*, 543 U.S. 335, 344 n.4 (2005). The phrase "for violations of Federal law" therefore applies equally to all three duties listed in the law enforcement proviso—"make arrests," "seize evidence," *and* "execute searches."

Finally, Plaintiff simply disregards that the types of torts enumerated in the law enforcement proviso are typically committed by individuals with traditional police powers. Like the *Pellegrino* majority, Plaintiff refuses to read the words of the law enforcement proviso together and in context, rejecting the multiple and mutually reinforcing indicia of its

---

[5] Plaintiff's unfounded speculation, (Doc 13 at 13 n.5), that TSA screeners must have authority to seize evidence and make arrests, contrary to the sworn Crawford Declaration, ¶¶ 5–12, does not create a material dispute of fact. *See Leuthauser*, 2020 WL 4677296, at *3 (concluding that TSA screeners do not engage in any "act of seizing evidence" within the meaning of the law enforcement proviso).

intended scope in favor of isolated words and phrases read as broadly as possible. Having interpreted the "plain language" of the proviso without regard for *all* of the statutory text and canons of construction, thereby stretching its coverage to include any federal employee empowered to look for items in any context,[6] Plaintiff then refuses to consider legislative history that confirms the text's narrower scope.

Plaintiff's arguments that TSA screeners should be considered "investigative" officers despite their highly circumscribed administrative role and lack of any civil or criminal investigatory function are based on an improper reading of portions of statutory text in isolation. Plaintiff's interpretation of the law enforcement proviso would have it reach any federal employee empowered to engage in any activity that might be considered a search, regardless of whether the activity has any civil or criminal law enforcement or investigatory purpose. This Court should join the majority of other courts, including the only courts from within the Tenth Circuit to address the issue, that have rejected that overbroad construction. *See* (Doc. 11 at 10 n.4); *Weinraub*, 927 F. Supp. 2d 258; *Corbett*, 568 F. App'x at 700–02.[7]

---

[6] This inescapable consequence of Plaintiff's interpretation was implicitly acknowledged by the *Pellegrino* majority, which engrafted an atextual limitation on its holding to avoid covering other categories of Federal employees who conduct administrative searches. 937 F.3d at 176-77.

[7] Although Plaintiff discounts the persuasiveness of the Eleventh Circuit's unpublished decision in *Corbett*, (Doc. 13 at 7), this Court may "rely on an unpublished opinion to the extent its reasoned analysis is persuasive." *Gutierrez v. N.M. Corr.*, 403 F. Supp. 3d 1090, 1094 n.2 (D.N.M. 2019). Plaintiff also overstates the persuasiveness of the decisions in *Pellegrino* and *Iverson*. (Doc. 13 at 8). Both cases had sharply divided opinions, with better reasoned dissents lodged in both (representing the views of five circuit judges in total). Moreover, those decisions are not binding on this Court, no controlling precedent exists in the Tenth Circuit, and the great majority of federal judges to consider the question—including the only two who have addressed the issue within this Circuit—have agreed with Defendant.

## II. The TSA screeners' alleged conduct was not "extreme and outrageous."

Plaintiff's Opposition relies on dramatic characterizations of the events pled in the Complaint, insinuating motives and a level of intrusion that were not actually alleged. Such bluster should not distract from the specific factual allegations and objective consideration of the airport security screening context. Plaintiff has actually alleged only that she briefly lowered her pants and underwear to her knees so as to remove an object and show it to TSA employees to resolve the AIT alarm in Plaintiff's groin area. (Doc. 2, ¶¶ 19, 33, 36). The Complaint did *not* allege that she fully removed any clothing or was "half-naked," (Doc. 13 at 18), that TSA employees intended to look at her partially unclothed body, or that they actually did so. Accordingly, the factual allegations pled in the Complaint do not support Plaintiff's assertions about the egregiousness of her screening experience. Moreover, the context in which the alleged events occurred is critical to analyzing whether the screeners' conduct was so "extreme and outrageous" that it was outside the bounds of civilized society. Plaintiff triggered an AIT alarm in her groin area, and during a subsequent pat-down to resolve that alarm a TSA screener felt an item underneath Plaintiff's clothing. Plaintiff alleges the item was a "feminine hygiene product," and that she told screeners as much. But the screeners did not know what the item was (indeed there was no way for them to know), and the nature of their security screening duties meant they could not simply take Plaintiff's word for it; instead, they had to make sure the object detected by the AIT machine and felt during the pat-down was not a prohibited item or potential threat to transportation security. *See* (Doc. 11 at 24, n.12). Under those circumstances, the screeners' alleged conduct in directing Plaintiff to remove the item from underneath her clothing—in a private room where only two other women were present—so it could be visually inspected

8

to verify it was not a security risk is not the type of extraordinary transgression required to state a claim for IIED.

Disregarding the hyperbole and invective,[8] Plaintiff's Opposition provides no meaningful distinction between this case and the controlling Tenth Circuit decision applying Oklahoma law in *Dubbs v. Head Start, Inc.*, 336 F.3d 1194 (10th Cir. 2003). The Court of Appeals held in *Dubbs* that performing a medical examination of pre-school children without their parents' consent was not extreme and outrageous conduct as a matter of law. The Court reached that conclusion even though the examinations included viewing and touching exposed genitals and drawing blood, and even though the alleged lack of parental consent made the examinations unreasonable under the Fourth Amendment. Here, Plaintiff has alleged that she was subject to a search that was much less intrusive than the examinations in *Dubbs*. As in *Dubbs*, even if the alleged conduct was improper under relevant policies, and even if it violated the Fourth Amendment, what occurred was simply not beyond the bounds of decency.

Plaintiff's efforts to distinguish *Dubbs* are not persuasive. She argues against Defendant analogizing the essential nature of her allegations in this case to the degree of privacy intrusion that might be experienced in a locker room. (Doc. 13 at 20). Plaintiff contends that lack of consent is the fundamental difference between what she allegedly experienced and "voluntary use of a locker room." *Id.* But Plaintiff's focus on consent is unavailing in light of *Dubbs*, where the court held that examination of children's bodies was not extreme and

---

[8] Plaintiff's assertions that Defendant's arguments are "frivolous and dishonest" and the Court should remind Defendant of "obligations under Fed. R. Civ. P. 11(b)," (Doc. 13 at 18, 21), are inappropriate and unnecessary. *See, e.g.*, *Sokoli v. J&M Sanitation, Inc.*, No. 15-cv-295, 2015 WL 7720466, at *6 (D. Idaho Nov. 27, 2015) ("Lawyers are not to hurl Rule 11 about like a handful of sand in the sandbox.").

outrageous *regardless* of the lack of consent. *Dubbs* teaches that as a matter of Oklahoma IIED law, whether alleged conduct during a Fourth Amendment search is extreme and outrageous does not turn on consent, but on the objective degree of intrusion. Thus, the examinations in *Dubbs* were not extreme and outrageous because they caused no more intrusion on the children than what society tolerates: "the examinations did not go beyond the reasonable bounds of standard well-child examinations." 336 F.3d at 1218. Here, the screeners' alleged directions to resolve an alarm at a security screening checkpoint were no more intrusive on privacy than what society commonly tolerates, regardless of Plaintiff's allegations about her consent.

### III.     Plaintiff did not allege actionably "severe" emotional distress.

Defendant presented significant authorities supporting its position that the Complaint does not adequately allege severe emotional distress. Plaintiff's Opposition does not present any conflicting or additional authorities to which a reply is necessary. Plaintiff did not cite a single case holding that factual allegations of the type pled here are sufficient to establish severe distress.

### IV.     Conclusion

For the foregoing reasons, Defendant respectfully requests that Plaintiff's Complaint be dismissed pursuant to Rule 12(b)(1) and (b)(6).

Respectfully submitted,

UNITED STATES OF AMERICA

CLINTON J. JOHNSON
United States Attorney

*s/Rachael F. Zintgraff*
RACHAEL F. ZINTGRAFF, OBA No. 31597
Assistant United States Attorney
110 West 7th Street, Suite 300
Tulsa, Oklahoma 74119
T: 918-382-2700
F: 918-560-7948
Rachael.Zintgraff@usdoj.gov

**Certificate of Service**

I hereby certify that on January 25, 2022, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF System, which will send notification of such filings to the parties entitled to receive notice.

*s/Michelle Hammock*
Michelle Hammock
Paralegal Specialist