UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| RHONDA MENGERT, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 21-CV-443-CVE-SH |
| ) | |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Defendant. ) | |

**OPINION AND ORDER**

Now before the Court is Defendant's Motion for Summary Judgment (Dkt. # 50). Defendant United States of America seeks summary judgment on plaintiff Rhonda Mengert's false imprisonment claim. Defendant argues that a false imprisonment claim is not available under Oklahoma law when a person is detained by a governmental employee acting within the scope of their employment. Dkt. # 50, at 3. Defendant also argues that plaintiff cannot show that her detention was unlawful or that Transportation Security Administration (TSA) employees acted with the requisite intent to confine plaintiff. Id. at 4-5. Plaintiff responds that she may have mistakenly alleged a false imprisonment instead of a false arrest claim, and she asks the Court to treat her claim as a false arrest claim arising under Oklahoma law. Dkt. # 53, at 25-26. Plaintiff contends that she was unlawfully confined when TSA agents subjected her to a "strip search" and she argues that the search exceeded the scope of an administrative search under the Fourth Amendment. Id. at 20-24.

**I.**

On May 12, 2019, Mengert went through security at the Tulsa International Airport and she passed through an advanced imaging technology scanner. Dkt. # 51-1, at 9; Dkt. # 51-2, at 2. The scanner identified the presence of an object in Mengert's groin area, and TSA employee Amy

Morroney conducted a targeted pat-down of Mengert pursuant to TSA policy. Dkt. # 51-2, at 2. Morroney believed that she felt something during the pat-down and she was unable to clear Mengert to pass through security, because she was unable to determine the nature of the item she felt near plaintiff's groin. Id. at 3-4. Mengert told Morroney that the object was a pad, but Morroney determined that additional screening was required. Id. at 7. Morroney completed the pat-down process by swabbing plaintiff's hand with fabric and placing the fabric in an explosives trace detection (ETD). Dkt. # 51-1, at 10. The ETD test was negative for the presence of explosives and a male TSA employee told Mengert that she was cleared to pass through security. Id. at 11.

However, Morroney determined that it was necessary for Mengert to remove the item in question from her groin for inspection, and Morroney took Mengert to a private screening room.[1] Dkt. # 51-1, at 11. Mengert did not make any objection to the additional screening and the entire process had taken about two minutes up to the time that Moronney determined that it was necessary to move Mengert to a private screening room. Id. at 11-12, 14. Mengert walked into the private screening room with Morroney and Whitney Brown, another TSA employee, and either Morroney or Brown closed the door to the screening room. Dkt. # 51-2, at 9. Morroney handed Mengert a paper privacy drape and directed Mengert to lower her shorts in order to remove the object. Dkt. # 51-1, at 19; Dkt. # 51-2, at 9-10. Mengert responded that the object was a feminine hygiene product

---

[1] Defendant states as an undisputed fact that Morroney was required to have Mengert remove the object for inspection by TSA's standard operating procedure (SOP), and defendant cites its response to an interrogatory as support for this proposition. However, the discovery response does not include a written copy of the SOP or a citation to any relevant regulations or statutes. Dkt. # 51-4. For the purpose of the Opinion and Order, the summary judgment record does not contain sufficient evidence to support defendant's assertion that Morroney was required to ask Mengert to remove the item, but the Court will consider whether Morroney could have reasonably been exercising her discretionary authority to conduct additional screening of Mengert.

and said something to the effect "you've got to be kidding me." Dkt. # 51-1, at 20. Mengert did not unfold the privacy drape, ask how the privacy drape should be used, or ask either of the TSA agents to assist her with the use of the privacy drape. Id. at 21. Mengert asked for clarification as to what the TSA agents wanted her to do, and she was told that the agents needed to "clear the area" before Mengert could leave to board her flight. Id. at 23. Mengert testified in her deposition that she was expressly directed to pull her pants and underwear down to her knees and remove the item for inspection. Id. at 22. Mengert made no attempt to use the privacy drape, and she lowered her shorts and removed the feminine hygiene product. Id. at 23-25. Morroney confirmed that the object was a feminine hygiene product and that the object was not a prohibited item or a security threat. Dkt. # 51-2, at 13. Mengert said something to the effect of "are you satisfied," replaced the pad, and pulled up her clothes. Dkt. # 51-1, at 26. Neither Morroney or Brown immediately responded to Mengert, and Mengert asked to leave three more times before one of the TSA employees opened the door without saying anything. Id. at 25-26. Mengert took her luggage and left the room. The parties agree that Mengert spent less than three minutes in the private screening room and the entire encounter lasted approximately seven minutes. Dkt. # 51, at 12; Dkt. # 53, at 9.

Mengert filed this case alleging claims of false imprisonment and intentional infliction of emotional distress against the United States under the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671-2680 (FTCA). In a prior opinion and order (Dkt. # 18), the Court dismissed Mengert's intentional infliction of emotional distress claim, but the Court rejected defendant's request to dismiss Mengert's false imprisonment claim for lack of subject matter jurisdiction. The case was set for trial on September 18, 2023, but all remaining deadlines in the scheduling order

(Dkt. # 38) have been stayed pending a ruling on defendant's motion for summary judgment. Dkt. # 58.

## II.

Summary judgment pursuant to Fed. R. Civ. P. 56 is appropriate where there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986); Kendall v. Watkins, 998 F.2d 848, 850 (10th Cir. 1993). The plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Celotex, 477 U.S. at 317. "Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" Id. at 327.

"When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986) (citations omitted). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the [trier of fact] could reasonably find for the plaintiff." Anderson, 477 U.S. at 252. In essence, the inquiry for the Court is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Id. at 250. In its review,

the Court construes the record in the light most favorable to the party opposing summary judgment. Garratt v. Walker, 164 F.3d 1249, 1251 (10th Cir. 1998).

### III.

Defendant argues that plaintiff's false imprisonment claim fails for a purely legal reason, because a false imprisonment claim may be alleged against a private person only, not the state or federal government. Dkt. # 51, at 13. Defendant also argues that any confinement of plaintiff was lawful pursuant to TSA's authority to conduct administrative searches under the Fourth Amendment, and the brief confinement for the purpose of ensuring aviation security was lawful. Dkt. # 14-16. Plaintiff responds that defendant is "technically correct" that she should have alleged a false arrest claim, instead of a false imprisonment claim, but she asserts that there is no substantial distinction between these claims under Oklahoma law and this is not a sufficient reason to enter summary judgment in favor of defendant. Dkt. # 53, at 26. Plaintiff argues that her detention for any amount of time based on Morroney's demand that plaintiff remove a feminine hygiene product was unlawful, and she claims that she was "strip searched" in violation of her rights under the Fourth Amendment. Id. at 12-24.

Plaintiff has alleged a tort claim against the federal government under the FTCA. According to the Supreme Court "[t]he FTCA was designed primarily to remove the sovereign immunity of the United States from suits in tort." Millbrook v. United States, 569 U.S. 50, 52 (2013) (internal quotations omitted). "The Act gives federal district courts exclusive jurisdiction over claims against the United States for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of a federal employee acting within the scope of his office or employment." Id. (citing 28 U.S.C. § 1346(b)(1)) (internal quotations omitted). Plaintiff's false

5

imprisonment claim against defendant is brought pursuant to the FTCA, and the Court must apply state substantive law to determine whether defendant can be held liable. Hill v. SmithKline Beecham Corp., 393 F.3d 111, 1117 (10th Cir. 2004).

Under Oklahoma law, "[f]alse imprisonment is a common-law wilful tort." Walters v. J. C. Penney Co., 82 P.3d 578, 583 (Okla. 2003) (citing Restatement (Second) of Torts § 35 (Am. Law Inst. 1965)). Section 35 of the Restatement (Second) of Torts identifies three essential elements to establish an actor's liability to another for false imprisonment: 1) "he intends to confine the other or a third person within boundaries fixed by the actor;" 2) "his act directly or indirectly results in such a confinement of the other;" and 3) "the other is conscious of the confinement or is harmed by it." Restatement (Second) of Torts § 35. Accordingly, the Oklahoma Supreme Court has found that "[a] person is not liable for false imprisonment unless his act is done for the purpose of imposing a confinement, or *with knowledge that such confinement will, to a substantial certainty, result from it*." Swafford v. Vermillion, 261 P.2d 187, 191 (Okla. 1953) (internal quotations omitted and emphasis in Swafford). A claim of false imprisonment is distinguishable from a claim of false arrest under Oklahoma law, but both claims share an important similarity in that they concern the confinement or detention of the plaintiff. "In a false imprisonment, the detention is purely a matter between private persons for a private end, and there is no intention of bringing the person detained before a court, or otherwise securing the administration of the law." Guthrie v. Gragg, 2016 WL 3746566, *10 (E.D. Okla. July 8, 2016) (quoting Alsup v. Skaggs Drug Center, 223 P.2d 530, 526-27 (Okla. 1949)). In contrast, an imprisonment occurs as part of a false arrest claim, "but detention is by reason of an asserted legal authority to enforce the processes of the law." Id. Under Oklahoma law, a false arrest is defined as "an unlawful restraint of an individual's personal liberty or freedom

of locomotion." Roberts v. Goodner's Wholesale Foods, Inc., 50 P.3d 1149, 1151 (Okla. Civ. App. 2002).

Defendant argues that plaintiff has asserted a claim for false imprisonment, and such claims are permitted only in disputes between private parties. Plaintiff concedes that defendant is "technically correct" that she should have alleged a false arrest claim, rather than a false imprisonment claim, but she argues that Oklahoma courts treat false imprisonment claims against government officials as false arrest claims. Dkt. # 53, at 25-26. The Court declines to grant summary judgment solely on the ground that plaintiff alleged a false imprisonment claim when she should have alleged a false arrest claim. Lawfulness or privilege is a valid defense to claims of false arrest and false imprisonment, and this issue has been fully briefed by the parties. The Court will treat plaintiff's false imprisonment claim as a false arrest claim, and the Court declines to grant summary judgment in favor of defendant merely because plaintiff alleged the wrong tort claim under Oklahoma law.

The parties' briefing addresses numerous issues concerning the reasonableness of the search procedures utilized by the TSA screeners, but most of these issues are outside of the scope of plaintiff's false arrest claim. Plaintiff has not alleged a Bivens[2] claim challenging the constitutionality of the screening procedures, and she is not seeking to hold the individual TSA employees liable for violating her constitutional rights. TSA employees undoubtedly detained or confined plaintiff for a limited period of time, and defendant does not contest that a search or detention occurred. Plaintiff does not dispute that pre-flight screenings at airports are permissible

---

[2] Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971) (recognizing a claim against federal officers for money damages for the alleged violation of a person's federal constitutional rights).

under the Fourth Amendment, and plaintiff is not generally challenging the regulatory scheme concerning airport security. Instead, plaintiff's tort claim is essentially a challenge to the screening procedures utilized by Moronney, and she repeatedly argues that she was subjected to an illegal "strip search." Dkt. # 53, at 20. The sole claim before the Court is a false arrest claim under Oklahoma law, and the primary issue is whether there was an "unlawful restraint of [plaintiff's] liberty or freedom." Roberts, 50 P.3d at 1151. Even if the Court were to assume TSA employees used improper screening procedures, plaintiff must show that Morroney's decision to require a brief detention of plaintiff for additional screening was itself unlawful, and the focus will be on whether plaintiff's detention was unlawful or unprivileged under the circumstances.

Defendant argues that TSA screeners are permitted to detain passengers at security checkpoints until the screening process is complete, and defendant claims that pre-flight suspicionless searches of passengers are lawful under the Fourth Amendment. The Fourth Amendment provides that "[t]he right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures, shall not be violated . . . ." U.S. CONST. amend. IV. Pre-flight searches as passengers proceed through airport security have been deemed valid under the administrative search exception to the warrant requirement:

> Blanket suspicionless searches "calibrated to [a] risk may rank as 'reasonable.'" [United States v. Aukai, 497 F.3d 955, 958 (9th Cir. 2007)] (quoting Chandler v. Miller, 520 U.S. 305, 323 (1997)). For example, if properly limited, "searches now routine at airports and at entrances to courts," are reasonable because they respond to a "'risk to public safety [that] is substantial and real.'" Id. (quoting Chandler, 520 U.S. at 323). Generally, "airport screening searches . . . are constitutionally reasonable administrative searches because they are 'conducted as part of a general regulatory scheme in furtherance of an administrative purpose, namely, to prevent the carrying of weapons or explosives aboard aircraft, and thereby to prevent hijacking.'" Id. at 960 (quoting United States v. Davis, 482 F.2d 893, 908 (9th Cir. 1973).

8

United States v. McCarty, 648 F.3d 820, 830-31 (9th Cir. 2011).  TSA screeners also have the statutory authority to conduct "screening[s] of all passengers and property," and this includes the authority to conduct "physical searches" of persons seeking to pass through airport security. Pellegrino v. United States of America Transportation Security Administration, 937 F.3d 164, 172 (3d Cir. 2019). "Those presenting themselves at a[n] [airport] security checkpoint thereby consent to a search, and may not revoke that consent if the authorities elect to conduct a search." Corbett v. Transp. Sec. Admin., 568 F. App'x 690, 697 (11th Cir. June 4, 2014) (quoting United States v. Herzbrun, 723 F.2d 773, 776 (11th Cir. 1984)).

      The parties do not dispute that plaintiff was detained for approximately seven minutes before she was permitted to pass through airport security, but they dispute whether the encounter became unlawful under the Fourth Amendment when Morroney directed plaintiff to lower her clothing and remove her feminine hygiene product.  The Court finds that it is unnecessary to resolve the issue of whether the search procedures were unlawful, because this is well outside the scope of plaintiff's tort claim of false arrest.  The sole issue before the Court is whether defendant's actions constituted an "unlawful restraint on [plaintiff's] liberty or freedom of locomotion." Shaw v. City of Oklahoma City, 380 P.3d 894, 899 (Okla. Civ. App. 2016).  The undisputed facts establish that plaintiff presented herself for pre-flight screening at the Tulsa International Airport, and the initial screening of plaintiff detected an unidentified object in plaintiff's groin area.  Morroney conducted a patdown of plaintiff's person and was unable to clear plaintiff to proceed through security due to the presence of an object in plaintiff's groin area that was "bulkier" than a typical feminine hygiene product. Dkt. # 51-2, at 4.  Morroney moved plaintiff to a private screening room for additional screening, and

there is no dispute that plaintiff was asked to remove the object from her groin area for inspection. There is also no dispute that the entire encounter lasted approximately seven minutes.

Plaintiff has not shown that the pre-flight security procedures constituted an unlawful restraint of her freedom or liberty. The facts unequivocally show that plaintiff was briefly detained, and it is not necessary for the Court to provide a lengthy analysis of the parties' arguments concerning whether plaintiff was confined.[3] The more relevant issue is whether plaintiff's liberty was unlawfully restrained, and this is a relatively narrow issue that does not require consideration of whether the alleged "strip search" was lawful under the Fourth Amendment.[4] Viewing the facts in a light most favorable to plaintiff, there is no way to view the actual detention or confinement of plaintiff as unlawful. The TSA screener, Morroney, testified in her deposition that she felt an object in plaintiff's groin area and she could not positively clear to leave the security checkpoint without identifying the object. Dkt. # 51-2, at 4. Morroney detained plaintiff for a total of seven minutes to determine the nature of the suspicious object, and the length of the detention was not excessive

---

[3]   The parties dispute whether plaintiff was free to leave or whether plaintiff was confined for the purpose of her tort claim. Defendant simultaneously argues that plaintiff was free to leave, but it cites cases supporting the proposition that an airline passenger may not leave a security checkpoint after being held for additional screening. Dkt. # 51, at 15, 21-27. For the purpose of this Opinion and Order, the Court will assume that plaintiff was confined and that her liberty was restrained by the security screening.

[4]   Plaintiff argues that "three minutes of confinement for an unlawful strip search is an injury of a completely different magnitude than three minutes for a merely technical violation of the officer's authority . . . ." Dkt. # 53, at 20 n.6. Plaintiff cites no Oklahoma authority suggesting that the nature of the confinement is a factor in determining whether the confinement itself is unlawful. This appears to be plaintiff's way of making her allegations concerning the "strip search" relevant to her false arrest claim. The Court will consider the totality of the circumstances to determine whether plaintiff's detention was lawful or privileged, but the Court finds that plaintiff's arguments concerning the screening procedures fall outside of the scope of her false arrest claim.

considering the nature and purpose of the detention. Defendant has a strong interest in ensuring that passengers do not pass through airport security with prohibited items, and courts have consistently held that the federal government is permitted to engage in suspicionless searches or detentions at airport security checkpoints. It is possible that the detention of a passenger at an airport security checkpoint could become unlawful if it is "prolonged beyond the time reasonably required to complete [its] lawful mission." Corbett, 568 F. App'x at 698. However, the detention was not prolonged or excessive in this case, and it is clear that the length of the detention is not the basis for plaintiff's tort claim. Instead, plaintiff repeatedly challenges what occurred during her brief pre-flight detention, and she is not arguing that TSA generally lack the authority to conduct limited searches or detentions. Plaintiff's false arrest claim is not the proper vehicle to raise arguments concerning the manner of plaintiff's detention, and she has failed to show that she was unlawfully detained by TSA employees prior to boarding her flight. The Court concludes that plaintiff was lawfully detained as she passed through airport security and the detention was not prolonged or excessive, and defendant is entitled to summary judgment on plaintiff's false arrest claim.

**IT IS THEREFORE ORDERED** that Defendant's Motion for Summary Judgment (Dkt. # 50) is **granted**. A separate judgment is entered herewith.

**DATED** this 31st day of August, 2023.

CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE